**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Shannon C. Smith

    v.

Andrew Saul,[1] Commissioner,
Social Security Administration

Case No. 18-cv-1086-PB
Opinion No. 2019 DNH 193

**MEMORANDUM AND ORDER**

Shannon Smith challenges the denial of her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 405(g). She contends that the Administrative Law Judge ("ALJ") erred by (1) failing to properly analyze her mental impairments at step two and thereafter; (2) failing to follow the Social Security Administration's ("SSA") Ruling on the Evaluation of Fibromyalgia, SSR 12-2p, 2012 WL 3104869 (July 25, 2012); and (3) improperly giving greater weight to non-examining state agency consultants than to Smith's treating and examining medical sources. The Commissioner, in turn, moves for an order affirming the ALJ's decision. For the following reasons, I grant Smith's motion and remand this matter to the Commissioner for

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. He replaced the nominal defendant, Nancy A. Berryhill, who had been Acting Commissioner of Social Security.

further proceedings consistent with this order.

## I. BACKGROUND

### A. Procedural Facts

Smith is a forty-four-year-old woman who has previously worked as a gas station attendant and cashier and currently works part time at a Dunkin' Donuts. See Administrative Transcript ("Tr.") at 297, 305. She alleges that she has been disabled since January 12, 2016, due to a combination of fibromyalgia, Chiari malformation,[2] migraines, depression, and anxiety. Tr. at 18–19.

Smith filed claims for DIB and SSI on November 30, 2016. Tr. at 271. After an initial denial on March 16, 2017, Tr. at 121, she testified at a hearing before ALJ Thomas Merrill on November 13, 2017. Tr. at 39–80. The ALJ denied Smith's applications, Tr. at 32, and the SSA Appeals Council denied her request for review. Tr. at 1–3. As such, the ALJ's decision constitutes the Commissioner's final decision, which Smith now appeals.

### B. Medical Evidence

In this section, I decline to recite a full history of

---

[2] Chiari malformation is "a congenital anomaly in which the cerebellum and medulla oblongata, which is elongated and flattened, protrude into the spinal canal through the foramen magnum . . . It may be accompanied by hydrocephalus, spina bifida, syringomyelia, and mental defects." Dorland's Illustrated Medical Dictionary 1098 (32d ed. 2012).

2

Smith's medical treatment, opting instead to focus on the treatment records necessary to provide context in this case.

Prior to Smith's alleged disability onset date, she was diagnosed and/or treated by various providers for migraines, e.g., Tr. at 389, 404, 416, 686; anxiety/panic disorder, e.g., Tr. at 389, 416, 429, 436, 686, 687, 695, 703 ; depression, e.g., Tr. at 389, 436, 686, 695; Chiari malformation, Tr. at 389; and fibromyalgia, e.g., Tr. at 429; as well as other ailments not claimed as a basis for her disability, e.g., Tr. at 389, 397–98, 422.

Following the alleged onset date, Smith continued to seek treatment for fibromyalgia, anxiety, and depression from her primary care physician, Dr. Nanyee Keyes on February 24, 2016. Tr. at 441–42. That June, Smith discussed with a physician assistant how her fibromyalgia interfered with her sleep, which in turn exacerbated her fibromyalgia symptoms. Tr. at 446. Another doctor, Dr. Mitchell Young, diagnosed Smith as having fibromyalgia affecting her shoulder on September 24. Tr. at 474. Smith returned to Dr. Keyes on November 18, who noted 14 positive fibromyalgia tender points (out of a possible 18) and scores of 15 and 14 on the depression and anxiety scales, respectively. Tr. at 468, 479–80. That same day, in support of Smith's application for DIB and SSI, Dr. Keyes completed a physical medical source statement listing diagnoses of

3

fibromyalgia, depression, and anxiety. Tr. at 465–68.[3] She also submitted a mental impairment source statement, which noted diagnoses of anxiety and depression. Tr. at 469–72. Dr. Keyes checked boxes for thirty-four "signs and symptoms," Tr. at 470, and for various functional limitations at varying levels of severity, Tr. at 471. On January 11, 2017, Smith sought treatment for fibromyalgia from a physician assistant, Tr. at 492, and again from Dr. Keyes on January 18, Tr. at 493. On November 23, Smith saw Dr. Jing Ji about her headaches. Tr. at 481–82. Dr. Ji found "no major concern" regarding Chiari malformation, but noted that Smith could have hemiplegic migraines. Tr. at 484. Dr. Ji saw Smith for a follow-up three months later. Tr. at 506–07.

She was evaluated by Dr. David Kamen, a consultative psychologist, on February 1. Tr. at 510–15. Dr. Kamen noted both positive and negative aspects of Smith's functioning, including

---

[3] The ALJ discounted this report by Dr. Keyes's as internally contradictory, in part due to a misrepresentation of what Dr. Keyes wrote in it. Specifically, in an error repeated in Defendant's briefs, the ALJ claimed that "Dr. Keyes noted that the claimant could sit for three hours at a time but could only sit for two hours in an eight-hour workday." Tr. 30. In fact, Dr. Keyes appears to have crossed out the number "2" and written in "3" above it, Tr. 466, making her answers consistent on this point. Since, as discussed below, my remand is not based upon the ALJ's weighing of Dr. Keyes's opinion, I need not address his reasons for doing so in any detail. I point out this discrepancy only to caution the ALJ on remand to ensure that his reasons for discounting this or any other report are, in fact, supported by the record.

4

several depression and anxiety symptoms that Smith presented during the evaluation. Tr. at 510. Ultimately, he concluded that he did "not believe that [Smith] is able to sustain an ordinary routine and regular work attendance . . . ." Tr. at 514.

Smith also had a fibromyalgia evaluation conducted by Dr. Prachaya Nitichaikulvatana on April 4, Tr. at 877, and spoke with Dr. Sumathi Rajanna on June 2 following a panic attack and self-harm incident at work, Tr. 884. She had an initial evaluation at Greater Nashua Mental Health Center on July 18, during which she reported symptoms "indicative of a diagnosis of Major Depressive Disorder, moderate, recurrent with anxious distress." Tr. at 526. She was also given a rule-out diagnosis of borderline personality disorder. Tr. at 526. At her September 5 follow-up with Dr. Nitichaikulvatana, Smith reported worsening fibromyalgia pain. Tr. at 887.

Smith began therapy with Camila Fonseca on July 31. Tr. at 528. She continued to see Ms. Fonseca, eventually asking her to complete a Mental Impairment Medical Source Statement on October 3. Tr. at 918–21. This statement identified only three "signs and symptoms," Tr. at 919, and noted far less severe functional limitations than Dr. Keyes's earlier statement, Tr. at 920.

### C. The ALJ's Decision

The ALJ assessed Smith's claims under the five-step analysis required by 20 C.F.R. § 404.1520. At step one, he found

5

that Smith had not engaged in substantial gainful activity ("SGA") since January 12, 2016, her alleged disability onset date. Tr. at 18. At step two, the ALJ found that Smith's fibromyalgia was a severe impairment, but that her Chiari malformation, migraines, anxiety, and depression were non-severe. Tr. at 18–24. At step three, the ALJ concluded that Smith did not "have an impairment or combination of impairments that medically meets or equals a listed impairment" in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Tr. at 24–25.

The ALJ next evaluated Smith's residual functional capacity ("RFC") and determined that she could perform light work, with the following exceptions:

> [Smith] can lift and carry 10 pounds frequently and 20 pounds occasionally; sit for six hours in an eight[-]hour work period; stand, or walk for six hours in an eight[-]hour work period; perform unlimited pushing and pulling of 10 pounds frequently and 20 pounds occasionally with the upper and lower extremities; occasionally climb, stoop, kneel, crouch or crawl; and frequently balance.

Tr. at 25. Based upon this RFC, the ALJ determined at step four that Smith could perform her past work as a fast food worker or cashier and was, therefore, not disabled. Tr. at 32. Having resolved the claim at step four, the ALJ did not proceed to step five.

6

## II. STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the Commissioner's final decision. See 42 U.S.C. § 405(g). That review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I "defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence." Id. (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). It means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion . . . ." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991) (per curiam). The Commissioner's findings "are not conclusive when derived by ignoring evidence, misapplying the

law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35. "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

### III. <u>ANALYSIS</u>

Smith argues that a remand is required for three principal reasons: (1) the ALJ failed to properly consider Smith's non-severe impairments at step two and thereafter; (2) the ALJ did not follow SSR 12-2p, 2012 WL 3104869; and (3) the ALJ improperly gave greater weight to non-examining state agency consultants than to Smith's treating and examining medical sources. Smith's first argument is dispositive and warrants a remand. I first address the ALJ's handling of Smith's non-severe impairments at step two. I then discuss his handling of those impairments at both step three and the RFC calculation stage that precedes step four.

## A. Step Two Analysis of Non-Severe Impairments

In his decision, the ALJ determined that Smith's fibromyalgia was a severe impairment. Tr. at 18. The ALJ also determined, however, that there was "no evidence that any other conditions have met the durational requirements of this program, or that they create any specific functional limitations regarding [Smith's] ability to perform basic work-related activities" and thus any such conditions were "non-severe." Tr. at 24. Smith challenges this determination.

I need not decide whether the ALJ erred by concluding that Smith's other impairments were non-severe because "[t]his court has consistently held . . . that an error in describing a given impairment as non-severe is harmless so long as the ALJ found at least one severe impairment and progressed to the next step of the sequential evaluation." Chabot v. U.S. Soc. Sec. Admin., No. 13-cv-126-PB, 2014 WL 2106498, at *9 (D.N.H. May 20, 2014).

Had the ALJ not identified fibromyalgia as a severe impairment, I would need to address whether substantial evidence supported his conclusion that Smith's other impairments were non-severe. Where, as here, the ALJ finds at least one severe impairment and resolves step two in the claimant's favor, the decision not to treat other impairments as severe is, at most, harmless error. See Hines v. Astrue, No. 11-cv-184-PB, 2012 WL 1394396, at *12 (D.N.H. Mar. 26, 2012), adopted by 2012 WL

1393063 (D.N.H. Apr. 20, 2012). Because, in this case, the ALJ identified fibromyalgia as a severe impairment at step two, the appropriate question is whether the ALJ adequately addressed the non-severe impairments *after* step two. See Lavoie v. Colvin, No. 15-cv-209-PB, 2016 WL 3554963, at *2 (D.N.H. June 24, 2016).

**B.   Analysis of Non-Severe Impairments after Step Two**

In assessing whether a claimant is disabled, an ALJ must consider "the combined effect of all of a claimant's impairments[,]" regardless of whether those impairments are individually classified as "severe." McDonald v. Sec'y Health & Human Servs., 795 F.2d 1118, 1126 (1st Cir. 1986); see 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. 404.1523(c). It is "simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work." McDonald, 795 F.2d at 1127. An ALJ must therefore "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. 404.1523(c); see SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996). And, although an ALJ has "considerable latitude" in how he considers non-severe impairments, Chabot, 2014 WL 2106498, at *10, he may "not disregard individual, non-severe impairments where the claimant's collective impairments are severe," Forni v.

Barnhart, No. 05-cv-406-PB, 2006 WL 2956293, at *8 (D.N.H. Oct. 17, 2006). It is reversible error for an ALJ not to consider a claimant's non-severe impairments in conjunction with her severe impairments at step three and when formulating her RFC. See, e.g., Lavoie, 2016 WL 3554963, at *3–4 (overturning ALJ's decision where claimant's non-severe depression was not considered in conjunction with her severe impairments, including fibromyalgia); Morse v. Colvin, No. 14-cv-18-LM, 2015 WL 1243169, at *8 (D.N.H. Mar. 17, 2015) (remanding case where ALJ failed to discuss combination of claimant's severe and non-severe impairments at step three and at RFC calculation); Forni, 2006 WL 2956293, at *8–9 (concluding that ALJ's failure to consider non-severe depression in conjunction with severe asthma and carpal tunnel syndrome warranted remand); Stephenson v. Halter, No. CIV. 00-391-M, 2001 WL 951580, at *2 (D.N.H. Aug. 20, 2001) (ruling that ALJ does not meet requirement of 20 C.F.R. § 1523 merely by finding that impairment is not severe either alone or in combination with other impairments, but must actually address non-severe impairment when assessing RFC).

Like the ALJs in Lavoie, Morse, Forni, and Stephenson, the ALJ in this case discussed Smith's severe and non-severe impairments individually at step two. Tr. at 18-24. Then, at step three, he concluded that she did not have "an impairment or combination of impairments that medically meets or equals a

listed impairment." Tr. 25. In reaching that conclusion, however, he never once mentioned any of Smith's non-severe impairments, let alone discussed how they might, in combination with her severe fibromyalgia, equal a listed impairment.[4] The words "migraine," "Chiari malformation," "anxiety," and "depression" do not appear.

After step three, in determining Smith's RFC, the ALJ's only mention of any non-severe impairments is a reference to Smith's testimony that her depression prevented her from exercising, thereby interfering with her fibromyalgia treatment.[5] Tr. 26. In the RFC calculation, the words "migraine," "Chiari malformation," and "anxiety" are again nowhere to be found. This suggests that the ALJ did not include Smith's non-severe

---

[4] Somewhat puzzlingly, the ALJ did consider, albeit in a cursory manner, the "potential effects obesity has in causing or contributing to impairments in other body systems." Tr. 25. Smith at no point alleged disability based upon obesity, nor do any of the medical reports referenced by the ALJ list obesity as a potentially disabling condition. In fact, the Disability Determination Explanation that Smith appealed to the ALJ lists her BMI as 27.4, Tr. 140, which falls below the National Institutes of Health obesity threshold of 30. See [Stedman's Medical Dictionary](...) 620200 (28th ed. 2006); SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002).

[5] This interaction between the severe fibromyalgia and non-severe depression is but one example of how an impairment that does not equal a listed impairment on its own might be exacerbated by another, even non-severe, impairment such that the combined effect does rise to the level of a listed impairment. It underscores the importance of considering the various impairments in combination and providing enough explanation of that analysis to allow for judicial review.

impairments in his RFC calculation and only considered her severe fibromyalgia. Cf. Lavoie, 2016 WL 3554963, at *3 (holding that ALJ's failure to mention claimant's depression at RFC stage suggests it was "impermissibly dropped" from the analysis).

The Commissioner presents two arguments in defense of the ALJ's decision, neither of which is persuasive. First, the Commissioner notes that the ALJ stated that "he had reviewed and considered all 'severe' and 'non-severe' impairments in formulating the RFC." Defs.' Mem. of Law in Supp. of Defs.' Mot. for an Order Affirming the Decision of the Comm'r. Doc. No. 12-1 at 19 (internal quotation marks omitted). The Commissioner's own brief, however, concedes that this language is mere "boilerplate." Doc. No. 12-1 at 19. This court has consistently ruled that a "boilerplate assertion that an ALJ considered all of the claimant's impairments in combination, without describing any actual analysis, is insufficient." Lavoie, 2016 WL 3554963, at *4 (internal brackets and quotation marks omitted) (quoting Morse, 2015 WL 1243169, at *8).

Second, the Commissioner identifies two instances in the ALJ's RFC calculation that reference Medical Source Statements by Dr. Keyes, Tr. 465–72, and Ms. Fonseca, Tr. 918–21, as evidence to "back[] up that boilerplate." Doc. No. 12-1 at 19. The Commissioner's assertion that Dr. Keyes's treatment notes "did not reflect any abnormal mental status findings," Doc. No.

12-1 at 19, are inaccurate, because Keyes's notes, at minimum, identify a score of 14 for anxiety and a score of 15 for depression. Tr. 479. But even if the ALJ's characterization of Smith's mental impairments had been accurate, it would not remedy the more fundamental concern that he failed to consider the combined effect of these non-severe mental impairments with Smith's severe fibromyalgia. "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity." Morse, 2015 WL 1243169, at *9 (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). The SSA's own ruling on the evaluation of fibromyalgia further emphasizes the requirement of "consider[ing] the effects of all of the person's medically determinable impairments, including impairments that are 'not severe.'" SSR 12-2p, 2012 WL 3104869, at *6. [6]

---

[6] Because the ALJ's failure to consider the impairments in combination is sufficient grounds to remand this case, I need not consider Smith's argument that the ALJ failed to cite and follow SSR 12-2p. The Commissioner asks me to adopt from other circuits a rule that an ALJ is not required to mention a ruling by name if he substantially complies with it. Doc. No. 12-1 at 14. Even if I were to adopt this rule, the ALJ did not substantially follow SSR 12-2p in this case, as that ruling explicitly requires the ALJ to consider fibromyalgia in combination with other impairments. SSR 12-2p, 2012 WL 3104869 at *6. On remand, the ALJ must follow SSR 12-2p in all respects. In the event I am again asked to review the ALJ's decision, proper citation to SSR 12-2p will assist me in ensuring that the ruling has been followed.

Depression and anxiety are both associated with fibromyalgia. Id. at *3. Courts have found that the interaction of mental conditions, such as depression, with fibromyalgia can "result[] in increased pain and suffering." Barnes v. Astrue, No. 07-2141, 2008 WL 5210753, at *3 (W.D. Ark. Dec. 10, 2008); see also Hazelton v. Astrue, No. 4:08-2767-TER, 2010 WL 1052840, at *5 (D.S.C. Mar. 19, 2010) (remanding case where "ALJ discussed [claimant's] fibromyalgia, anemia, asthma, and depression separately, but did not discuss her impairments in combination as required."). Thus, even though, in this case, the ALJ credited a medical opinion that the claimant's mental impairments resulted in no more than "mild difficulty in completing activities of daily living," Tr. 30, he should still have considered the potentially disabling effects of those non-severe impairments in combination with Smith's fibromyalgia in formulating her RFC.

An ALJ's opinion "must provide adequate explanation to show that he had considered the combined effect of the impairments as to allow proper judicial review." Lavoie, 2016 WL 3554963, at *4 (quoting Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)). Where, as here, the ALJ fails to provide such adequate explanation, his decision is not supported by substantial evidence and must be remanded for further consideration. See id.

## IV. CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 12) and grant Smith's motion to reverse (Doc. No. 9). Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

November 13, 2019

cc: Janine Gawryl, Esq.
Michael L. Henry, Esq.